### GREAT NORTHERN RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 24, 1914.)

No. 2310.

1. MASTER AND SERVANT (§ 13*)—OPERATION OF RAILROADS—HOURS OF SERVICE LAW—MOVEMENT OF TRAINS—"MOVEMENT"—"EMPLOYÉ."

Hours of Service Law (Act Cong. March 4, 1907, c. 2939, 34 Stat. 1415 [U. S. Comp. St. Supp. 1911, p. 1321]), prohibiting the employment of railroad employés longer than 16 hours without relief, defines the term "employé" to mean a person actually engaged in or connected with the movement of any train. *Held*, that the word "movement," as so used, is not restricted to the actual revolution of the wheels of a train or locomotive engaged in interstate commerce, and that a railroad fireman, acting as a locomotive watchman, while his train was tied up on a siding, was engaged in the movement of a train within the statute.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. § 13.*

For other definitions, see Words and Phrases, vol. 5, p. 4615; vol. 3, pp. 2369–2377; vol. 8, p. 7649.]

2. MASTER AND SERVANT (§ 13*)—OPERATION OF RAILROADS—EMPLOYÉS—HOURS OF SERVICE LAW—CHARACTER OF DUTY.

Hours of Service Law (Act Cong. March 4, 1907, c. 2939, 34 Stat. 1415 [U. S. Comp. St. Supp. 1911, p. 1321]) makes it unlawful for any carrier to require or permit any employé to remain on duty for a longer period than 16 consecutive hours, etc. *Held* that, where, after a railroad fireman had been working for 16 hours as such, his train was tied up on a siding and he was compelled for 8 additional hours to remain on duty as watchman of his engine, during which time his duties were not essentially different in kind from those required of him in the operation of the engine, though lighter in degree, such change from fireman to watchman did not prevent his continued employment from constituting a violation of the statute.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. § 13.*]

In Error to the District Court of the United States for the Northern Division of the District of Idaho; Frank S. Dietrich, Judge.

Action by the United States against the Great Northern Railway Company to recover a penalty for violation of the Hours of Service

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Law (Act Cong. March 4, 1907, c. 2939, 34 Stat. 1415 [U. S. Comp. St. Supp. 1911, p. 1321]). Judgment for the United States (206 Fed. 838), and defendant brings error. Affirmed.

The plaintiff in error, a corporation organized and doing business under the laws of the state of Minnesota, and acting as a common carrier engaged in interstate commerce by railroad in the state of Idaho, was charged in the complaint filed by the United States Attorney in the court below with having violated an act of Congress approved March 4, 1907, entitled "An act to promote the safety of employés and travelers upon railroads by limiting the hours of service of employés thereon" (34 Stat. 1415), by requiring and permitting its certain employé and fireman, Ed. Bergen, to be and remain on duty as such employé and fireman upon its line of railroad at and between the stations of Hillyard, in the state of Washington, and Laclede, in the state of Idaho, for a longer period than 16 hours, to wit, from the hour of 6 o'clock a. m. on July 10, 1912, to the hour of 6 o'clock a. m. on July 11, 1912.

The case was tried in the court below upon an agreed statement of facts, from which it appeared that Ed. Bergen, the employé and fireman named in the complaint, had entered upon his duties as such fireman upon one of the locomotives of the railroad company, at Hillyard, Wash., on July 10, 1912, at the hour of 6 o'clock a. m.; that said locomotive, after being attached to a freight train of the railroad company engaged in the movement of interstate commerce, left Hillyard, Wash., at said hour, and proceeded eastward over the Spokane division of the railroad company, and arrived at Laclede, Idaho, at 9:59 p. m. on that date; that throughout the movement and operation of the locomotive and freight train from Hillyard, Wash., to Laclede, Idaho, and during the whole of that time, the fireman, Ed. Bergen, was engaged in firing the locomotive, without interruption or rest, and without being off duty as such employé and fireman.

It further appeared from the agreed statement of facts that upon arriving at Laclede, Idaho, at 9:59 p. m. on July 10, 1912, the locomotive and freight train were run onto a siding leading out of and into the main line of the railroad company, the whole of the freight train and locomotive occupying the siding, leaving the main line of the railroad free and clear for the unobstructed movement of trains passing along the main line; that the switches at each end of the siding were then locked and thereafter remained locked in such position that the freight train and locomotive could not leave such position, and no train could proceed from the main line to or upon the siding; that the brakes on the locomotive and freight train were set so that the same could not be moved unless the brakes should be released; that thereupon the crew of the locomotive and freight train, other than the employé and fireman, Ed. Bergen, retired to rest upon the freight train, and the orders of the freight train and locomotive, constituting the orders under which they had a right to proceed or move, were annulled.

The stipulated facts also showed that after the locomotive and freight train were placed on the siding and tied up as above set forth, and up to and until 6 o'clock a. m. on July 11, 1912, the fireman and employé, Ed. Burgen, remained on the locomotive continuously, during which time he was on duty as an engine watchman, and was charged with performing and did perform no other duties or work other than the duties and work of an engine watchman.

The court below found for the plaintiff and against the railroad company, and assessed the fine of the latter at $100. A judgment was thereafter entered against the railroad company for that amount.

F. V. Brown, of Seattle, Wash., E. C. Lindley, of St. Paul, Minn., and Charles S. Albert and Thomas Balmer both of Spokane, Wash., for plaintiff in error.

C. H. Lingenfelter, U. S. Atty., of Boise, Idaho.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The act of Congress of March 4, 1907, so far as it is applicable to this case, provides as follows:

"* * * The provisions of this act shall apply to any common carrier or carriers, their officers, agents and employés, engaged in the transportation of passengers or property by railroad in the District of Columbia or any territory of the United States, or from one state or territory of the United States or the District of Columbia to any other state or territory of the United States or the District of Columbia, or from any place in the United States to an adjacent foreign country, or from any place in the United States through a foreign country to any other place in the United States. The term 'railroad' as used in this act shall include all bridges and ferries used or operated in connection with any railroad, and also all the road in use by any common carrier operating a railroad, whether owned or operated under a contract, agreement, or lease; and the term 'employés' as used in this act shall be held to mean persons actually engaged in or connected with the movement of any train.

"Sec. 2. That it shall be unlawful for any common carrier, its officers or agents, subject to this act to require or permit any employé subject to this act to be and remain on duty for a longer period than sixteen consecutive hours, and whenever any such employé of such common carrier shall have been continuously on duty for sixteen hours he shall be relieved and not required or permitted again to go on duty until he has had at least ten consecutive hours off duty; and no such employé who has been on duty sixteen hours in the aggregate in any twenty-four hour period shall be required or permitted to continue or again go on duty without having had at least eight consecutive hours off duty."

Upon the arrival of the freight train and locomotive of the plaintiff in error, upon which its employé, Bergen, was engaged as a fireman, at Laclede, Idaho, at 9:59 p. m. on July 10, 1912, he had been on duty as such fireman continuously, without interruption, and without any opportunity for rest, from 6 o'clock on the morning of that date, a period of 16 consecutive hours. Upon arriving at Laclede, Idaho, the locomotive and freight train were tied up on one of the sidings of the plaintiff in error located at that point, and all of the crew of the locomotive and freight train (with the exception of the fireman, Bergen) were released from any and every duty in connection with the movement of the same, and retired to rest upon the train. The fireman, Bergen, remained on the locomotive in the capacity of engine watchman, from the time of the tying up and side-tracking of the locomotive and freight train at 9:59 p. m. up to and until 6 o'clock a. m. on the following morning, a period of 8 hours, making in all 24 consecutive hours during which he was on duty as fireman and as engine watchman.

The plaintiff in error contends that while their fireman was acting as engine watchman on the locomotive, for the period during which their freight train and locomotive were tied up on the siding, the employé was not a person "actually engaged in or connected with the movement of any train," within the meaning of those words as used in the act of Congress; and further that the final eight hours during which their employé was engaged as and performing the duties of engine watchman on their locomotive, and while it was tied up and side-tracked on their siding as aforesaid, constituted no portion of the period of duty covered by the act of Congress, and that, so far as the final period of eight hours is concerned, the act does not apply.

[1] With respect to the first of these contentions, we do not think that the narrow interpretation insisted upon by the plaintiff in error can be applied to the language of the act above quoted. We cannot believe that it was the intention of Congress that the word "movement" should be restricted to the actual revolution of the wheels of a train or locomotive engaged in interstate commerce, for, if that interpretation were the correct one, obviously the very object of the act, the promotion of the safety of employés and travelers upon railroads, would be frustrated. The sidings of a railroad are a part of its system and are indispensable to the proper operation and movement of its trains. Tying up on a siding for any purpose, whether to await orders, or for the passing of other trains, or for any other purpose connected with the transportation of freight or passengers, is as much a part of the general movement of a train as the actual running thereof on the main line and at scheduled periods. The fact that, as in this case, the delay was for a period of eight consecutive hours does not operate to make it any the less a delay occurring in the ordinary course of the general movement of the trains of the plaintiff in error. Such delays are a part of the general operations whereby traffic over railroads is conducted. Following this contention of the plaintiff in error to its logical conclusion, the result would be that the freight train and locomotive in this case could have been side-tracked and tied up for an hour at a time, at intervals of an hour, and its employé required to remain on duty as fireman and as engine watchman alternately for an indefinite period, yet it would not have been guilty of a violation of the act under consideration.

[2] It is next contended by the plaintiff in error that the final eight hours during which their employé was engaged in performing the duties of engine watchman on their locomotive, while it was tied up and side-tracked on their siding, constituted no portion of the period of duty covered by the act. The duties of an engine watchman, as appears from the agreed statement of facts in this case, consisted in watching the quantity of water in the boiler of the engine which he was employed to watch, and in replenishing the same so that the engine could always have an adequate supply of water whereby steam could be adequately and efficiently and promptly generated, so that, when the engine was again to be moved, it could move under its own steam without delay incident to waiting until the engine could have again developed sufficient steam, and likewise to watch the fire in the fire box of the engine, and to replenish the same with fuel, so that the fire would be kept up to such an extent that steam would be generated, so that, when it was next desired to move the engine, the same could move without delay by means of the steam so generated by means of the fire. But wherein did these duties of the employé as engine watchman differ from his duties as fireman? In no essential particular, as we view it. It is true that, when a locomotive is actually running, the duties of a fireman, with respect to keeping a proper amount of water in the boiler, and a proper amount of fire in the fire box, may be more strenuous and occupy his time to a greater extent than when the locomotive is side-tracked and tied up on a siding; but that would be merely a ques-

tion of degree and would not affect the general nature of the duties of his occupation. The all-important fact not to be lost sight of in this case is that the employé was required and permitted to continue to apply himself to and perform, for a period of eight consecutive hours (after 16 consecutive hours of labor), duties very similar to those which he had been performing for the 16 hours immediately before, without being granted any period during which he might have an opportunity for rest. The argument of the plaintiff in error, in connection with the contention now under consideration, is that the safety of its employés and of the travelers upon its railroad was not imperiled by the employé remaining on duty the additional period of eight hours as engine watchman. Conceding that this might be true as to the employés and travelers upon other trains, the fact would still remain that had the fireman, Bergen, during this additional period while he was acting as engine watchman, through fatigue and general debility due to excessive hours of labor, permitted the water in his locomotive to become so low that an explosion would have been caused thereby, his own safety, and perhaps the safety of the other members of the crew of the train, who had during that period retired to rest upon the train, would have been imperiled.

There is another and a much stronger argument which we think fully supports the views which we have stated. The act prohibits any common carrier from requiring or permitting any "employé" to be and remain on duty for a longer period than 16 consecutive hours. There is no distinction made in the act as to any particular duty or duties which an employé may be performing during the whole time, or any portion of the time, he is on duty. In this case, when Bergen's duties were changed from those of fireman to those of engine watchman, he continued to be no less an employé of the railroad company. In other words, had he been employed as an engine watchman during the entire period of 24 consecutive hours, there could be no question but that such employment would have constituted a violation of the act. The fact that during the 24-hour period he was employed for 16 hours as fireman and for 8 hours as engine watchman does not lessen the offense.

The judgment of the court below is affirmed.