UNITED STATES v. GREAT NORTHERN RY. CO.

(District Court, D. Idaho, N. D. July 9, 1913.)

No. 442.

MASTER AND SERVANT (§ 17*)—HOURS OF SERVICE ACT—CONSTRUCTION.

A fireman on a locomotive engaged in hauling trains on an interstate railroad is an employé "actually engaged in or connected with the movement of" such trains, and within the provisions of Hours of Service Act March 4, 1907, c. 2939, § 2, 34 Stat. 1416 (U. S. Comp. St. Supp. 1911, p 1321), and to require him to remain on duty for a longer period than 16 consecutive hours is a violation of the statute, although such duty for a part of the time has no connection with the running of trains, and regardless of whether such other work precedes or follows his service as fireman.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 16; Dec: Dig. § 17.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by the United States against the Great Northern Railway Company. Judgment for plaintiff.

C. H. Lingenfelter, U. S. Atty., of Boise, Idaho.

Chas. S. Albert, of Spokane, Wash., Herman H. Taylor, of Sandpoint, Idaho, and Thos. Balmer, of Seattle, Wash., for defendant.

DIETRICH, District Judge. The action is brought to recover the penalty prescribed in what is popularly known as the "Hours of Service Act" (Act March 4, 1907, c. 2939, 34 Stat. 1415 [U. S. Comp. St. Supp. 1911, p. 1321]). The act is entitled "An act to promote the safety of employés and travelers upon railroads by limiting the hours of service of employés thereon." The term "employés" is therein defined as meaning "persons actually engaged in or connected with the movement of any train"; and common carriers are thereby prohibited from requiring or permitting any employé to remain on duty for a longer period than 16 consecutive hours. The government charges that in the year 1912 the defendant permitted one of its locomotive firemen, Ed. Burgen, to remain on duty continuously from 6 o'clock a. m. of July 10th to 6 o'clock a. m. of July 11th, upon a train running from Hillyard, in the state of Washington, to La Clede, in the state of Idaho.

From the written stipulation of facts upon which the cause has been submitted, it appears that the defendant is a common carrier engaged in interstate commerce by railroad in and through the states of Washington, Idaho, and Montana. Upon July 10, 1912, it directed Burgen, one of its locomotive firemen, to fire its locomotive engine which was to pull, and did pull, a freight train carrying commodities moving in interstate commerce, from Hillyard to La Clede, over what is known as the Spokane division of the defendant's railway system. He began firing and the train left the station of Hillyard at 6 o'clock a. m. on July 10th, and he continued to discharge his duties as fireman while the train was moving to La Clede, at which point it arrived at 9:59 o'clock p. m. of the same day, a period of 15 hours and 59 minutes. Upon the arrival of the train at La Clede it was run into the siding or side track leading out of and into the main line of the defendant's main track, and thereupon it occupied only the side track, leaving the main line clear for the unobstructed movement of trains approaching and passing through La Clede station. The switches at each end of the side track were thereupon locked, and thereafter remained locked in such position that the train could not leave the side track, and no other train could pass from the main line to and upon the side track. The brakes were set so that neither the train nor the engine could move without first releasing the brakes. After the train was thus "tied up," as the process is called, at 10:30 o'clock p. m. on July 10th, it remained stationary on the siding, and no member of its crew, including Burgen, received or was obliged or permitted to receive any order with reference to the future movement of the train or engine. Burgen, however, was permitted and required to remain upon the engine continuously thereafter, until 6 o'clock the next morning, during which time he was on duty as an engine watchman, charged

with the performance of no other duty or work than that of engine watchman. These duties consisted of watching the quantity of water in the boiler of the engine and in replenishing the same so that the engine would always have an adequate supply of water whereby steam could be efficiently and promptly generated, so that when the engine was again to be moved it could be moved under its own steam, and without the delay incident to waiting until steam could be generated afresh, and in watching the fire in the fire box, and replenishing the same with fuel, so that there would always be a sufficient fire to generate steam. At 6 o'clock in the morning of July 11th Burgen was relieved by another fireman, and thereupon he retired to the train for rest, and did not again go on duty or perform duties of any kind until after he had five days of rest.

From this abstract of the facts, as stipulated, it appears that Burgen was actually engaged as fireman a little less than 16 hours, but as fireman and engine watchman he was on duty continuously for 24 hours, and the question for determination therefore is whether, under the circumstances, his service as engine watchman brings the case within the statute. Conceding, as urged, but not deciding, that Burgen's service as engine watchman was not directly or indirectly connected with the movement of the train, he was primarily a locomotive fireman, and, as such, an "employé," as defined by the act, and was therefore subject to its operation. The defendant takes the position that by temporarily turning aside from his regular duty the employé becomes, and for the time being remains, exempt; but to this view I am unable to assent. While the statute is susceptible to such a construction, its prohibition is not, in terms at least, limited to service having to do directly or indirectly with the movement of trains. The language of the second section is:

"It shall be unlawful * * * to permit any employé subject to this act to be or remain on duty for a longer period than 16 consecutive hours."

There is here no express limitation of the operation of the act to a specific duty or class of duties; the limitation is rather to a class of employés, namely, those "actually engaged in or connected with the movement" of trains. The act must therefore be construed, and being remedial in its nature it must receive such construction as will give to its general purpose reasonable effect. United States v. Kansas City S. Ry. Co. (D. C.) 189 Fed. 471; United States v. Missouri Pacific Ry. Co., 206 Fed. 847 (decided by District Court for District of Kansas March 22, 1913).

Now the defendant's position is that the time Burgen was engaged in watching the engine is not to be counted, because, during such period, he was performing a duty having no connection with the movement of any train. Plainly in that view the test, and the only test, is the relation of the specific service to the movement of trains. Logically, therefore, it is wholly immaterial whether the service as watchman follows or precedes the service as fireman, or intervenes. It has no more connection with the movement of trains in the one case than in the other, and if want of such connection operates to exclude it

from consideration it is to be excluded the same in one case as in another. But clearly the purpose of the act could in part be very easily frustrated if an employé could be lawfully kept on watch for eight hours, and then immediately be required to fire an engine in transit for 15 hours and 59 minutes; or if he could be required to fire for 8 hours, then watch for 8 hours, and then fire again for 8 hours, all consecutively. It is not to be assumed that such a contingency, which is entirely possible under the construction urged by the defendant, was contemplated in the passage of the act. True, the violation of the spirit of the statute is more apparent in such a case, where the service as watchman precedes the service as fireman, than where, as here, it follows such service; but the difference is one of degree only, and the courts cannot with nicety distinguish between service which materially impairs and that which impairs only to an inappreciable extent the efficiency of a trainman. That 24 hours of continuous service, without sleep, is unnatural, cannot be gainsaid, and that if persisted in for any considerable length of time, even with liberal intervals of rest, it might injuriously affect the trainman's efficiency, is not unreasonable to believe. I cannot avoid the conclusion that it was the intent and purpose of Congress that men charged with the responsibility of safely moving trains in interstate commerce should not be required or permitted to work continuously for more than 16 hours at any one time. It has been suggested that the carrier has no power to compel its employés to rest, and when given the opportunity for rest they may use the time in laboring upon their own account or for some other employer, but such a contingency is remote in the extreme; at least it is one with which we are not presently concerned. Without further discussion, my conclusion is that, under a proper construction of the act, locomotive firemen, engineers, conductors, and other members of train crews, being "employés" as that term is defined, cannot be permitted to be on duty for more than 16 consecutive hours, regardless of the question whether such duty consists in whole or only in part of work directly connected with the movement of trains. In this view, and upon the facts stipulated, it must be held that the defendant is guilty.

As to the penalty, I entertain no doubt that the defendant acted in good faith, upon the belief that it was not violating the law, and it is therefore thought that a fine of $100 will satisfy the ends of justice. Judgment will be entered for that amount.