SAN PEDRO, L. A. & S. L. R. CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 27, 1914.)

No. 3955.

1. MASTER AND SERVANT (§ 13*)—STATUTORY REGULATIONS—HOURS OF SERVICE—"EMPLOYÉ."

Act March 4, 1907, c. 2939, § 2, 34 Stat. 1416 (U. S. Comp. St. Supp. 1911, p. 1321) makes it unlawful for any common carrier to permit any employé subject to that act to remain on duty for longer than 16 consecutive hours, and provides that whenever any such employé shall have been continuously on duty for 16 hours he shall be relieved and not permitted again to go on duty until he has had at least ten consecutive hours off duty, and that no such employé who has been on duty 16 hours in the aggregate in any 24-hour period shall be permitted to continue or again go on duty without having had at least 8 consecutive hours off duty. Section 1 defines "employé" as used therein as meaning persons actually engaged in or connected with the movement of any train. *Held,* that it was a violation of the act to require a fireman, after 16 continuous hours of duty in the movement of a train, to remain on duty for the purpose of watching his engine and keeping his fires alive until the coming of a relief crew, whether or not he thereby performed a duty in connection with the movement of the train, since the statute is highly remedial and should be liberally construed to effect its purpose, which is to promote the safety of employés and travelers and which would be defeated by excessive hours of service of any kind without rest.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. § 13.*

For other definitions, see Words and Phrases, vol. 3, pp. 2369–2377; vol. 8, p. 7649.]

2. MASTER AND SERVANT (§ 13*)—STATUTORY REGULATIONS—HOURS OF SERVICE.

Where a railway fireman, as required by the rules, reported a half hour before the schedule time for leaving a station, such half hour was a part

of the 16 hours' continuous service after which, under 34 Stat. 1415, the company was forbidden to permit him to continue on duty.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. § 13.*

Hours of service of employés, see note to United States v. Houston Belt & T. Ry. Co., 125 C. C. A. 485.]

In Error to the District Court of the United States for the District of Utah; John A. Marshall, Judge.

Civil action for penalties by the United States against the San Pedro, Los Angeles & Salt Lake Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Dana T. Smith, of Salt Lake City, Utah, for plaintiff in error.

Philip J. Doherty, Sp. Asst. U. S. Atty., of Washington, D. C. (Hiram E. Booth, U. S. Atty., of Salt Lake City, Utah, on the brief), for the United States.

Before HOOK and CARLAND, Circuit Judges, and VAN VALK-ENBURGH, District Judge.

HOOK, Circuit Judge. [1] The question in this case is whether a railroad company violates the hours of service act (Act March 4, 1907, c. 2939, 34 Stat. 1415 [U. S. Comp. St. Supp. 1911, p. 1321]), by requiring a fireman to watch his engine and keep the fires alive, until the coming of a relief crew, after 16 continuous hours of duty in the movement of a train in interstate commerce. Two instances substantially alike were charged by the government. In each case after 16 hours of service the train was tied up at a station short of its destination and all the crew but the fireman were relieved from duty. The fireman was required to watch his engine and keep it alive until another crew came and took charge. It was stipulated that while there he was not required or permitted "to do anything in connection with the actual movement of the train from" that station and that it was not intended he should have any responsibility for the movement if occasion arose. In one case the excess service charged was 8½ hours; in the other, 2 hours and 14 minutes, during part of which the engine and train were pulled on their way by another engine with another crew, the fireman still continuing to watch and fire. In other words, one fireman was on duty of one kind or another 24½ consecutive hours, and the other, likewise, 18 hours and 14 minutes. The railroad company contended that the time beyond 16 hours was not employed in or in connection with the movement of a train and therefore should not be counted. The trial court held with the government.

When the definitions of the first section of the statute are read into the prohibitions of the second, the law applicable here is as follows:

It shall be unlawful for any common carrier by railroad, engaged in interstate commerce, to require or permit any person in its service actually engaged in or connected with the movement of any train in such commerce to be or remain on duty for a longer period than 16 consecutive hours, and whenever such person shall have been contin-

uously on duty for 16 hours he shall be relieved and not required or permitted again to go on duty until he has had at least ten consecutive hours off duty; and no such employé who has been on duty 16 hours in the aggregate in any 24-hour period shall be required or permitted to continue or again go on duty without having had at least 8 consecutive hours off duty.

In this legislation Congress had in view the many serious railroad accidents caused by the unfitness for duty of men, engaged in or having to do with the movements of trains, who had endured excessive periods of continuous, unbroken service without intervals for rest. The remedy adopted was by limiting the maximum of the hours of service and the minimum for the intervals between. · It was thought futile to attempt to control the employés in their use of their off time; therefore, as being more practical and efficient, the command was laid upon and confined to those who gave them employment in their regular occupations. The statute is highly remedial and should be liberally construed to effect its purpose. United States v. Kansas City Southern, 121 C. C. A. 136, 202 Fed. 828. It is to be noted that the employés within the statute are those "actually engaged in or connected with the movement of any train"; but obviously the purpose of the legislation would be defeated if they might be required or permitted by their employers to occupy the hours intended for rest with railroad service of another kind. The particular character of the labor required or permitted in the intervals would seem immaterial. In Baltimore & Ohio R. Co. v. Commerce Commission, 221 U. S. 612, 31 Sup. Ct. 621, 55 L. Ed. 878, it was said:

· "The length of hours of service has a direct relation to the efficiency of the human agencies upon which protection to life and property necessarily depends. * * * If then it be assumed, as it must be, that in the furtherance of its purpose Congress can limit the hours of labor of employés engaged in interstate transportation, it follows that this power cannot be defeated either by prolonging the period of service through other requirements of the carriers or by the commingling of duties relating to interstate and intrastate operations."

To promote the safety of employés and travelers upon railroads the statute broadly contemplates the efficiency, as affected by reasonable opportunities for rest, of a class of men not ordinarily hired from day to day but engaged in regular service in connection with the movement of trains or subject to call for such service. It is contended that the excess service here was of another kind, and being at the end of the 16 hours is therefore immaterial, as it does not appear when thereafter the fireman returned to work. That is too narrow a view of the legislation, since it ignores the effect upon their efficiency of excessive hours of service of any kind without rest. But, taking the narrower view, it cannot be seriously doubted that the statute would be violated if the other service immediately preceded the 16 consecutive hours in a train movement. The attentiveness of mind so essential to safety in transportation might be as effectively impaired by loss of rest while oiling machinery in the shops or attending an engine on a siding as while serving on a moving train. Likewise if the train service aggregating 16 hours in a 24-hour period

were divided by intervening service of another kind. See United States v. Chicago, etc., R. Co. (D. C.) 197 Fed. 624. If this were not so, the requirements of a minimum of 10 hours' relief after 16 consecutive hours of duty, and of but 8 hours' relief after an aggregate of 16 hours of duty out of 24, would often work inconsistently. The shorter rest might follow the longer labor if the employé could without restraint be shifted in his work. We also think a railroad company cannot lawfully require or permit an employé within the statute who has served the 16 hours to turn then to other duty without the prescribed relief. United States v. Great Northern (D. C.) 206 Fed. 838. The 10-hour and 8-hour periods for rest were proportioned to sixteen hours of duty, not to 16 hours of one kind plus an indefinite number of another. This conclusion makes it unnecessary to consider whether a fireman who, after 16 consecutive hours of service as such, watches his engine on a siding and keeps it in a state of preparedness for his successor, is performing a duty in connection with the movement of the train. See United States v. Missouri Pacific (D. C.) 206 Fed. 847.

[2] It is not denied that the half hour before the schedule time for leaving the initial station should be counted, the fireman having reported as required by the rules (United States v. Illinois Central [D. C.] 180 Fed. 630; United States v. Denver & R. G. [D. C.] 197 Fed. 629); nor the further delay in departure (United States v. C., M. & P. S. [D. C.] 195 Fed. 783).

The judgment is affirmed.