NORTHERN PAC. RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. May 4, 1914.)

No. 2343.

1. MASTER AND SERVANT (§ 13*)—INTERSTATE RAILROAD—HOURS OF SERVICE LAW—CONSTRUCTION.

The Hours of Service Law (Act Cong. March 4, 1907, c. 2939, § 1, 34 Stat. 1415 [U. S. Comp. St. Supp. 1911, p. 1321]), defines the term "employés," as used in the act, to mean persons actually "engaged in or connected with the movement of any train," and section 2 makes it unlawful for any carrier to permit any employé subject to the act to remain on duty for a longer period than 16 consecutive hours, and declares that if any such employé shall have been continuously on duty for 16 hours, he shall be relieved and not required or permitted again to go on duty, until he has had at least 10 consecutive hours off duty. Held, that the intent of the act is to compel rest for each member of a train crew at the termination of each 16-hour period, to the end that his next and succeeding hours of service may be efficient, and where, prior to the termination of a 16-hour period in the operation of a freight train, it was placed on a side track and all the members of the crew relieved from duty except the fireman, who was required to remain as engine watchman and to keep up the fires and steam, the fact that he then had no duties to perform with reference to the "operation" of the train did not prevent his continued service as a watchman from constituting a violation of the act.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. § 13.*

Hours of service of employés, see note to United States v. Houston Belt & Terminal Ry. Co., 125 C. C. A. 485.]

2. MASTER AND SERVANT (§ 13*)—RAILROADS—REGULATION—HOURS OF SERVICE LAW—DEFENSES—ACT OF GOD.

Hours of Service Law (Act Cong. March 4, 1907, c. 2939, 34 Stat. 1415 [U. S. Comp. St. Supp. 1911, p. 1321]) makes it unlawful for any common carrier engaged in interstate commerce to permit any employé connected with the movement of any train to remain on duty longer than 16 consecutive hours, but declares that the act shall not apply when the continued service is caused by a casualty, unavoidable accident, or act of God. Held, that where defendant carrier, subject to the act, prior to the expiration of the 16-hour period, side-tracked a train and relieved the crew, with the exception of the fireman, because of an unprecedented storm, making it unsafe to continue the operation of the train, it was no defense to its liability for violation of the act in requiring such fireman to remain on duty as engine watchman that the train was stopped, and the continued service required, by an act of God.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. § 13.*]

In Error to the District Court of the United States for the District of Montana; Geo. M. Bourquin, Judge.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

213 F.—37

Action by the United States against the Northern Pacific Railway Company. From the judgment, defendant brings error. Affirmed.

Gunn, Rasch & Hall, of Helena, Mont., for plaintiff in error.

B. K. Wheeler, U. S. Atty., of Butte, Mont., and Philip J. Doherty and Walter N. Brown, Sp. Asst. U. S. Attys., both of Washington, D. C.

Before GILBERT and ROSS, Circuit Judges, and DIETRICH, District Judge.

ROSS, Circuit Judge. The government brought this action against the plaintiff in error railway company as defendant in the court below for alleged violations of the act of Congress, entitled "An act to promote the safety of employés and travelers upon railroads by limiting the hours of service of employés thereon," approved March 4, 1907 (34 Stat. p. 1415), the complaint containing two counts, the first alleging, in substance, that the defendant, in violation of the act, required and permitted one of its firemen, named Drew, "upon its line of railroad at and between the stations of Missoula in the state of Montana, and Avon in said state," to be and remain on duty as such for a longer period than 16 consecutive hours, to wit, from 10 p. m. of May 1, 1912, to 10:30 p. m. of May 2, 1912, the said fireman at the time being "engaged in and connected with the movement of said defendant's train No. Extra, drawn by its own locomotive engine No. 1654, said train being then and there engaged in the movement of interstate traffic"; and the second count alleging, in substance, a similar violation of the act by the defendant company in requiring and permitting one of its firemen named Jenson "upon its line of railroad at and between the stations of Missoula in the state of Montana, and Elliston in said state," to be and remain on duty as such for a longer period than 16 consecutive hours, to wit, from 3:40 o'clock p. m. of May 1, 1912, to 4 o'clock p. m. of May 2, 1912, being at the time "engaged in and connected with the movement of said defendant's train No. Extra, drawn by its own locomotive engine No. 1633, said train being then and there engaged in the movement of interstate traffic." By its answer the defendant, in addition to the denial of the alleged violations of the act of Congress, set up in respect to the first count that Missoula is a district terminal on the company's line of road, and Helena, Mont., is a divisional terminal thereof, and that after extra train 1654 had left Missoula for Helena with Drew as fireman, it encountered storm and snowfall of such unusual and unprecedented violence that when it arrived at the station of Avon, the telegraph and telephone lines of the company were down in both directions, destroying all means of communication with the operators and dispatchers of the company along the portion of its line here in question; that in consequence of the impossibility of proceeding with the train in such circumstances that train was left at Avon and the crew thereof, including the fireman Drew, having been then on duty 15 hours and 30 minutes, was released from duty in connection with the movement of the train, and Drew placed to watch and guard the engine on a side track. Sim-

ilar circumstances were pleaded in the answer to the second count of the complaint in respect to the service of the fireman, Jenson, on extra train 1633; that train being tied up at Elliston, Mont. Both trains proceeded east from Missoula, the stations in their order being Bearmouth, Drummond, Garrison, Avon, Elliston, and Blossberg, the last-named point being on the Rocky Mountain Divide which extends between Elliston and Helena. The answer further alleged that the delay in the movement of the trains in question and the necessity of watching and guarding their engines by the said firemen were occasioned by and due to the act of God and the result of causes which were not known to the defendant company, its officers or agents, at the time the trains left Missoula, and which could not have been foreseen.

The act in question in its first section specifies the common carriers to which its provisions are made applicable, and also declares that "the term 'employés' as used in this act shall be held to mean persons actually engaged in or connected with the movement of any train"; sections 2 and 3 are as follows:

"Sec. 2. That it shall be unlawful for any common carrier, its officers or agents, subject to this act to require or permit any employé subject to this act to be or remain on duty for a longer period than sixteen consecutive hours, and whenever any such employé of such common carrier shall have been continuously on duty for sixteen hours he shall be relieved and not required or permitted again to go on duty until he has had at least ten consecutive hours off duty; and no such employé who has been on duty sixteen hours in the aggregate in any twenty-four-hour period shall be required or permitted to continue or again go on duty without having had at least eight consecutive hours off duty: Provided, that no operator, train dispatcher, or other employé who by the use of the telegraph or telephone dispatches, reports, transmits, receives, or delivers orders pertaining to or affecting train movements shall be required or permitted to be or remain on duty for a longer period than nine hours in any twenty-four-hour period in all towers, offices, places, and stations continuously operated night and day, nor for a longer period than thirteen hours in all towers, offices, places, and stations operated only during the daytime, except in case of emergency, when the employés named in this proviso may be permitted to be and remain on duty for four additional hours in a twenty-four-hour period on not exceeding three days in any week: Provided further, the Interstate Commerce Commission may after full hearing in a particular case and for good cause shown extend the period within which a common carrier shall comply with the provisions of this proviso as to such case.

"Sec. 3. That any such common carrier, or any officer or agent thereof, requiring or permitting any employé to go, be, or remain on duty in violation of the second section hereof, shall be liable to a penalty of not to exceed five hundred dollars for each and every violation, to be recovered in a suit or suits to be brought by the United States district attorney in the district court of the United States having jurisdiction in the locality where such violation shall have been committed; and it shall be the duty of such district attorney to bring such suits upon satisfactory information being lodged with him; but no such suit shall be brought after the expiration of one year from the date of such violation; and it shall also be the duty of the Interstate Commerce Commission to lodge with the proper district attorneys information of any such violations as may come to its knowledge. In all prosecutions under this act the common carrier shall be deemed to have had knowledge of all acts of all its officers and agents: Provided, that the provisions of this act shall not apply in any case of casualty or unavoidable accident or the act of God; nor where the delay was the result of a cause not known to the carrier or its officer or agent in charge of such employé at the time said employé left a terminal, and which could not have been foreseen: Provided fur-

ther, that the provisions of this act shall not apply to the crews of wrecking or relief trains."

34 Stat. p. 1415.

[1] The contention of the plaintiff in error is that, as in each of the present instances the train and engine were side-tracked within 16 hours and their crews laid off for rest, and that thereafter the respective firemen were placed in charge of their respective engines only for the purpose of keeping up the fires and steam and otherwise watching the engines, they were not during such time actually engaged in or actually connected with the movement of a train, and therefore were not permitted or required by the railroad company to be or remain on duty for a longer period than 16 hours within the meaning of the act of Congress; and the decision of the Supreme Court in the case of Baltimore & Ohio R. R. Co. v. Interstate Commerce Commission, 221 U. S. 612, 31 Sup. Ct. 621, 55 L. Ed. 878 is cited by counsel as sustaining that contention. We cannot take that view of that case. In so far as it bears upon the question we have here, we think the proper conclusion to be drawn from it is quite the reverse, and sustains our conclusion that the intent of the act was and is to compel rest for each member of the train's crew at the termination of the 16-hour period, to the end that his next and succeeding hours of service may be efficient. For in the case cited the court, at page 619 of 221 U. S., at page 625 of 31 Sup. Ct. (55 L. Ed. 878) distinctly says:

"The length of hours of service has direct relation to the efficiency of the human agencies upon which protection of life and property necessarily depends. This has been repeatedly emphasized in official reports of the Interstate Commerce Commission, and is a matter so plain as to require no elaboration. In its power suitably to provide for the safety of employés and travelers, Congress was not limited to the enactment of laws relating to mechanical appliances, but it was also competent to consider, and to endeavor to reduce, the dangers incident to the strain of excessive hours of duty on the part of engineers, conductors, train dispatchers, telegraphers, and other persons embraced within the class defined by the act. And in imposing restrictions having reasonable relation to this end there is no interference with liberty of contract as guaranteed by the Constitution. Chicago, Burlington & Quincy Railroad Co. v. McGuire, 219 U. S. 549 [31 Sup. Ct. 259, 55 L. Ed. 328]. If then it be assumed, as it must be, that in the furtherance of its purpose Congress can limit the hours of labor of employés engaged in interstate transportation, it follows that this power cannot be defeated either by prolonging the period of service through other requirements of the carriers or by the commingling of duties relating to interstate and intrastate operations."

See, also, United States v. Great Northern Railway Co. (D. C.) 206 Fed. 838; United States v. Missouri-Pacific Railway Co. (D. C.) Id. 847.

[2] That the present case does not come within either of the provisions of the act, declaring that it "shall not apply in any case of casualty or unavoidable accident or the act of God; nor where the delay was the result of a cause not known to the carrier or its officer or agent in charge of such employé at the time said employé left a terminal, and which could not have been foreseen," is obvious, if for no other reason, because the uncontradicted evidence, as well as the answer of the defendant company itself, shows that each of the trains in question was stopped by direction of the railroad company, side-

tracked, and their respective crews laid off for rest within 16 hours from the time they left Missoula, for the very purpose of complying with the said statute, excepting only the two named firemen, who were continued at a duty which the company claims was not within the inhibition of the law; the mistake made was its own mistake in continuing one of each of the crews, the fireman, at the duty of watching the engines.

The judgment is affirmed.