GREAT NORTHERN RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. October 28, 1914.)

No. 4115.

1. MASTER AND SERVANT (§ 17*)—HOURS OF SERVICE—ACTIONS FOR PENALTIES —BURDEN OF PROOF.

Where, in an action against a railway company for penalties, the government showed that firemen were required to remain on duty more than 16 consecutive hours without being relieved from such duty, this cast upon the company the burden of proving by the greater weight of the testimony facts bringing the case within the proviso of Hours of Service Act March 4, 1907, c. 2939, § 3, 34 Stat. 1416 (Comp. St. 1913, § 8679), that such act shall not apply in any case of casualty, unavoidable accident, or act of God, nor where the delay was the result of a cause not known to the carrier, or its officer or agent in charge of the employé, when the employé left a terminal, and which could not have been foreseen.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 16; Dec. Dig. § 17.*]

2. MASTER AND SERVANT (§ 13*)—HOURS OF SERVICE—STATUTORY PROVISIONS —"EMPLOYÉ."

Where, though a train was tied up, its running temporarily suspended, and the rest of the train crew relieved from duty, within 16 hours from the time they went on duty, the fireman was required to watch and care for the engine, keep up steam, and the proper amount of water in the boiler, and otherwise care for it, thus remaining on duty for more than

16 hours, there was a violation of Hours of Service Act, § 2, making it unlawful for any common carrier to permit any employé subject to that act to be on duty for more than 16 consecutive hours, and section·1, providing that "employés" therein shall mean persons actually engaged in or connected with the movement of any train.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 11; Dec. Dig. § 13.*

For other definitions, see Words and Phrases, First and Second Series, Employé.]

**3.** MASTER AND SERVANT (§ 17*)—HOURS OF SERVICE—ACTIONS FOR PENALTIES —EVIDENCE ADMISSIBLE UNDER PLEADING.

In an action for penalties under the Hours of Service Act, a defendant, relying upon a defense under the proviso of section 3, must allege the facts constituting such defense; and hence, where the only defense alleged was that the employés named in the complaint were not kept on duty for more than 16 hours, evidence of facts claimed to constitute a defense under the proviso was not admissible.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 16; Dec. Dig. § 17.*]

**4.** STIPULATIONS (§ 18*)—AMENDMENT OF PLEADING.

Where evidence was inadmissible under the original answer, but the court at the trial gave leave to defendant to file an amended answer, which was not then filed, and no leave was granted to file it later, the parties could not bind the court by a provision, in a stipulation subsequently made, that a supplemental answer materially changing the issues might be filed, and considered as filed prior to the trial, and thereby require the appellate court to determine questions never determined by the trial court.

[Ed. Note.—For other cases, see Stipulations, Cent. Dig. §§ 41–54; Dec. Dig. § 18.*]

**5.** MASTER AND SERVANT (§ 13*)—HOURS OF SERVICE—STATUTORY PROVISIONS.

Within the proviso of Hours of Service Act, § 3, a hot box, an unusually heavy movement of grain, or an extraordinary head wind or storm, delaying trains to some extent in making their ordinary running time, but not causing obstructions to or breaks in the tracks or roadbed, is not a casualty, unavoidable accident, or act of God; and a delay thereby caused, requiring the train employés to work more than 16 hours consecutively, does not result from a cause not known to the carrier, or its officer or agent in charge of the trainmen, at the time they left the terminal, which could not have been anticipated and foreseen, as, in the exercise of reasonable diligence, such matters could be anticipated and guarded against, or the trainmen could be relieved, if necessary.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. § 13.*

Hours of service of employés, see note to United States v. Houston Belt & T. Ry. Co., 125 C. C. A. 485.]

In Error to the District Court of the United States for the District of Minnesota; Charles A. Willard, Judge.

Action for penalties by the United States against the Great Northern Railway Company. Judgment for the United States, and defendant brings error. Affirmed.

The United States sued the defendant railway company, a common carrier by railroad of property in interstate commerce, to recover penalties for three separate alleged violations of the act of Congress approved March 4, 1907 (34 Stat. 1415, c. 2939 [Comp. St. 1913, §§ 8677–8680]) commonly called the "Hours of Service Act." The trial

resulted in a directed verdict and judgment for the plaintiff on each count, and the defendant brings error.

John F. Finerty, Jr., of St. Paul, Minn. (E. C. Lindley, of St. Paul, Minn., on the brief), for plaintiff in error.

Roscoe F. Walter, Sp. Asst. U. S. Atty., of Washington, D. C. (Charles C. Houpt, U. S. Atty., of St. Paul, Minn., and Monroe C. List, Sp. Asst. U. S. Atty., of Washington, D. C., on the brief), for the United States.

Before HOOK and CARLAND, Circuit Judges, and REED, District Judge.

REED, District Judge (after stating the facts as above). The petition or complaint is in three counts, was filed February 28, 1913, and each count alleges that on certain dates named in October, 1912, the defendant required and permitted a person named therein, employed by it as fireman on one of its engines moving interstate traffic on the lines of its road, to be and remain on duty as such fireman longer than 16 consecutive hours, in violation of said act of Congress.

The original answer of the defendant was filed March 18, 1913, and admitted that defendant was engaged as a common carrier by railroad of interstate traffic at the times alleged in the petition, and for answer to count 1 thereof alleged: That its fireman named in said count (Joseph Boese) went on duty at 4 o'clock p. m., October 10, 1912, at Devils Lake, N. D., upon engine No. 1168, and upon arrival at Redland, Minn., a division terminal, said engine was "tied up" at 7:30 a. m., October 11th, and that the total number of hours of continuous service rendered by said fireman was less than 16. The answer to count 2 alleged that the fireman named in said count (S. Keeling) went on duty at 10:15 a. m., October 13, 1912, at Redland, Minn., as fireman on engine No. 1179, ran to Larimore, N. D., and return, arriving at Redland at 1:45 a. m. the next day, October 14th, and that said fireman was on duty less than 16 consecutive hours. The answer to count 3 alleged that its fireman (William Kohn) went on duty at 2 o'clock a. m., October 29, 1912, on engine No. 604 extra, at Garretson, S. D., for a run to Willmar, Minn.; that said engine was "tied up" at 5:15 p. m. of that day; and that said fireman was on duty as such for 15 hours and 15 minutes, and no more. The answer denies the other allegations of each count of the petition.

The jury was impaneled and the cause tried on June 4, 1913, resulting in a directed verdict and judgment for the plaintiff on that day upon each count of the petition.

The government's evidence on count 1 shows without dispute that engine No. 1168 on which Boese was fireman, left Devils Lake, N. D., at 4 o'clock p. m., October 10th, and arrived at Redland, a division terminal, the next morning at 7:30 a. m., when the engine was "tied up" and the crew, except Fireman Boese, relieved of duty; that he was required to remain as watcher of the engine until 11 o'clock a. m. of that day (October 11th), when he was relieved from duty after some 19 consecutive hours of service on and about the engine. The train dispatcher testified that the distance between Devils Lake and

Redland was 168 miles; that the ordinary running time between those stations was 12 to 13 hours; that he always figured whether a train would get into its terminal within the 16-hour period; that until this train got to Fisher, 12 miles from Redland, he had anticipated that it would get to Redland in sufficient time to allow the crew to be relieved within the 16 hours; that he held a passenger train at some point to enable the train to reach Redland within the 16-hour limit, and after the train left Fisher he sent a wire to Redland advising that the train was on short time. The defendant then offered to prove by its dispatcher that there was an unanticipated delay by reason of a hot box; also that there was at this time an unusually heavy grain movement on this division of the road, and even under these circumstances the dispatcher expected the train to reach the terminal in time to be relieved within the 16-hour limit. This offered testimony upon objection was ruled out as being immaterial under the issues, and the ruling is assigned as error.

Upon the second count the government's proof shows without dispute that the fireman (Keeling) went on duty at 10:15 a. m., October 13th, at Redland, the starting point of the train for a run to Larimore, N. D., and return, and returned to Redland at 1:45 a. m. the next day; that the others of the crew were then relieved within the 16-hour period, and Fireman Keeling required to remain about 1 hour and 20 minutes longer as watchman of the engine before he was relieved—making a total of some 17 hours of consecutive service by him. The defendant offered to show by its train dispatcher that the time consumed at Larimore before starting on the return trip was only sufficient to make up the train to be brought back, and that he expected that the train would get to Redland upon its return trip within the 16-hour period (as it in fact did); also that the train sheet showed no unusual delay in the way of hot boxes; that delays on account of hot boxes could not be anticipated or taken into account by the train dispatcher; and that there was no way of telling when they would occur. This offered testimony was rejected, upon motion of the government, as immaterial under the issues, and this ruling is assigned as error.

Upon the third count the government's proof shows without dispute that the engine crew of No. 604 extra was called to report for duty at 2 o'clock a. m., October 29, 1912, at Garretson, S. D., to take a train to Willmar, Minn., a division terminal; that the train left Garretson at 4:50 a. m. and arrived at Clara City at 4:55 p. m., within the 16-hour limit, when it was "tied up" and the crew other than the fireman relieved at 5:15 p. m.; that he (Kohn) was required to remain in charge of the engine as watchman, and did so remain at Clara City, until at least 8 o'clock p. m. of that day, when the engine with him in charge was, after 8 o'clock p. m., towed in from Clara City to Willmar by another train and crew, and arrived at Willmar some time later that evening. The defendant offered to show that the train did not make its usual time by reason of unavoidable delays; that the engine was on its second trip after having been overhauled generally, and because of that condition, and an extraordinary head wind, did

218 F.—20

not make the time expected of her; in fact, that when it made the trip the day before it made it without difficulty, and that was its initial trip after the overhauling. The offered testimony was upon objection rejected as being immaterial under the issues, and because the train had reached Clara City within the 16-hour period, and in time to relieve the other members of the crew. Counsel for defendant then stated:

"That it had two defenses to this cause of action: First, that the reason of the delay in this case was because of a condition not known at the time the train left the terminal, and was one which the officials in charge had no reason to foresee; that it was proper under the statute to have run the entire trip into the terminal at Willmar, because of the proviso which says that the statute shall not apply in cases where the delay is caused by something not known at the time the train left the terminal, and which could not have been foreseen by the officials. Second, that Kohn was not on duty, within the meaning of the statute, after he was relieved as fireman at Clara City."

The defendant also offered to prove that this is the only instance in which this train was required to "tie up" by reason of not being able to make the run within 16 hours; that the trainmaster first learned that the train would be unable to make its terminal at Willmar within 16 hours was when it arrived at a station called Maynard, some 25 miles from Willmar, when he received a message from the conductor in charge thereof that he would be unable to reach Wilmar within 16 hours. This offered testimony was rejected upon objection as being immaterial under the issues

The applicable provisions of the Hours of Service Act are:

Section 1: "That the provisions of this act shall apply to any common carrier or carriers, their officers, agents, and employés, engaged in the transportation of passengers or property by railroad" in interstate commerce; "and the term 'employés' * * * shall be held to mean persons actually engaged in or connected with the movement of any train."

Section 2 "That it shall be unlawful for any common carrier, its officers or agents, subject to this act to require or permit any employé subject to this act to be or remain on duty for a longer period than sixteen consecutive hours, and whenever any such employé * * * shall have been continuously on duty for sixteen hours he shall be relieved and not required or permitted again to go on duty until he has had at least ten consecutive hours off duty. * * * "

Section 3: " * * * Provided, that the provisions of this act shall not apply in any case of casualty or unavoidable accident or the act of God; nor where the delay was the result of a cause not known to the carrier or its officer or agent in charge of such employé at the time said employé left a terminal, and which could not have been foreseen. * * * "

[1] The testimony on behalf of the government shows without dispute that the fireman named in each count was required to remain on duty on and about his respective engine more than 16 consecutive hours without being relieved from such duty. This cast upon the defendant the burden of alleging and proving, by the greater weight of the testimony, facts which bring it within the proviso in section 3 of the act. United States v. Kansas City Southern Ry. Co., 202 Fed. 828, 121 C. C. A. 136.

[2] It was the contention of the defendant upon the trial in the District Court, and is its contention here, that when the engine upon

which each of the firemen was employed was "tied up" (that is, its run temporarily suspended) within the 16-hour period and the rest of the crew relieved from duty within such time, and the fireman required to watch and care for the engine, keep up its steam, the proper amount of water in the boiler, and otherwise care for the same thereafter, that while so engaged he was not employed "as fireman," and was not then within the provisions of this act. This court in San Pedro. L. A. & S. L. R. Co. v. United States, 213 Fed. 328, 130 C. C. A. 28, and the Court of Appeals in the Ninth Circuit in Great Northern Ry. Co. v. United States, 211 Fed. 309, 127 C. C. A. 595, and in Northern Pacific Ry. Co. v. United States, 213 Fed. 577, 130 C. C. A. 157, have held against this contention. A certiorari was denied by the Supreme Court in Great Northern Ry. Co. v. United States, above, May 1st of this year (234 U. S. 760, 34 Sup. Ct. 776, 58 L. Ed. 1580). The defendant's contention in this respect needs, therefore, no further consideration, and must be and is overruled.

The defendant offered to prove, upon the trial of count 1, that upon the run from Devils Lake to Redland, which are division terminals, that there was an unanticipated delay of the train because of a hot box; also that there was then an unusually heavy grain movement, and that even under these circumstances, the dispatcher expected that when the train reached Fisher, 12 miles from Redland, it would be able to reach Redland within the 16-hour period (as it in fact did). The court rejected this offered testimony as immaterial under the issues. A similar offer was made by the defendant upon the trial of count 2, which was rejected by the court for the same reason. Upon the trial of count 3 the defendant offered to prove by its trainmaster that the train did not make its usual time for reasons not known to defendant or its agents when the train left Garretson, one of which was that the engine was not working well, because it had recently been overhauled and it did not make the time expected of it.

It was upon the trial of this count that the defendant first suggested a defense under the proviso in section 3 of the act. It is proper, however, to say that the evidence upon count 3 was offered before the evidence upon counts 1 and 2 was offered. It is quite doubtful if this defense is properly before us for consideration At the close of the evidence upon all the counts the defendant moved for a directed verdict in its favor, which motion was denied, and defendant excepted. The government then moved for a directed verdict in its favor upon each count of the petition. Upon intimation of the court that it would have to be sustained, counsel for defendant said:

"I understand that the government is willing that the record shall show that we made no defense under the answer, and that we may make up a special plea in defense required under the proviso."

The court said:

"I will allow you to file an amended answer. It may be that you can settle upon the amendment."

No amendment was then filed, nor was leave granted to file it later. The motion of the government for a directed verdict in its favor was

then sustained, and judgment rendered for the plaintiff upon each count of the petition on June 4th as before stated. A stay of proceedings was then ordered until August 31, 1913, which was later extended to and including October 31, 1913, when the bill of exceptions was signed. On October 28th there was filed with the clerk, without further leave of court, a stipulation as follows:

"It is hereby stipulated between the parties to the above-entitled cause by their respective attorneys that the supplemental answer of the defendant, attached hereto and made part of this stipulation, may be filed in said cause, and may be considered as filed on or before the date on which said cause was called for trial, to wit, June 4, 1913; and it may be further considered that the trial of said cause was had as if said supplemental answer had theretofore been filed therein, and issue joined thereon, and evidence presented thereunder. [Signed by the attorneys of the respective parties.]"

The supplemental answer, so called, attached to the above stipulation, is as follows:

"Comes now the above-named defendant, and by leave of court first had and obtained makes further answer to the plaintiff's complaint herein, to wit:

"(1) States, as to plaintiff's first cause of action, that if Joseph Boese, as alleged therein, was required and permitted to be and remain on duty as fireman and employé for a longer period than 16 consecutive hours, that said Boese was so required and permitted to remain on duty because of delay which was the result of a cause or causes not known to the defendant, or its officer, or agent, in charge of said Boese at the time said Boese left the terminal known as Devils Lake, N. D., for the terminal known as Redland, Minn., and such delay could not have been foreseen, and said Boese was not required or permitted again to go on duty until he had had at least 10 consecutive hours off duty."

This answer to the second and third counts of the petition is identical with that to the first count above, except the name of the fireman and the terminals of the train upon which he was employed.

[3-5] The court was undoubtedly right in excluding the evidence offered by the defendant in support of any supposed defense it might have under the proviso in section 3 of the Hours of Service Act, as the only defense pleaded when this offer was made was that neither of the firemen was employed more than 16 consecutive hours upon his engine. If the defendant relied upon any defense under the proviso, it was its duty to allege the facts constituting such defense before the trial began, so that the government might know what it would be required to meet. The so-called supplemental answer is but an amendment to the original answer; but it was not filed until more than 4½ months after the trial and judgment. It does not appear from the record that the attention of the trial court was ever called to this stipulation, or to this supplemental answer. It may be that the statement of the court that it "would permit an amendment to the answer," and the stipulation of the government's counsel that it may be filed so long after the trial and without objection thereto, is sufficient to authorize its retention in the record as an amendment to the answer. But counsel should not be permitted to bind the court by stipulation that a pleading filed 4½ months after the trial is completed and judgment entered, which materially changes the issue, shall be considered as having been filed before the trial began, for this would permit them to require the appellate court to determine ques-

tions never determined by the trial court. But, putting aside this question, we are of opinion that the proffered testimony offered by the defendant does not show any casualty or unavoidable accident or an act of God, nor a delay which was the result of a cause not known to the carrier or its officer or agent in charge of the trainmen at the time they left a terminal, which could not have been anticipated and foreseen in the exercise of proper vigilance and care upon their part.

It is a matter of common knowledge among railroad officials and trainmen, as indicated by the defendant's testimony, that hot boxes are liable to occur at any time in the operation of railroad trains; and officials in charge of the running of such trains should be held to anticipate their occurrence and to exercise reasonable diligence to guard against delays because of them. If a hot box occurs in the running of a train that is liable to prevent it from reaching the end of its run within the 16-hour period, reasonable diligence would require that the car upon which it occurs should be set out at the first opportunity, and trainmen not continued on duty overtime because thereof to their detriment, and the danger to persons and property because of their lack of required rest.

That there was a heavy grain movement upon defendant's road at the time in question is surely not an unavoidable casualty, nor is it a cause that cannot be known or foreseen in the exercise of proper diligence upon the part of the officials in charge of the running of trains before they are sent out. Neither is an "extraordinary head wind" or a storm, that does not cause obstructions to or breaks in the track or roadbed that may delay trains to some extent in making their ordinary running time, a cause not to be anticipated or foreseen by train officials; and violations of the law in working the trainmen overtime can easily be avoided by relieving them, if necessary. In other words, the proviso in section 3 of the act does not relieve the officials in charge of train crews from exercising proper diligence to avoid working them overtime; and proper diligence requires train officials to know whether or not engines and cars are in proper condition for use when starting them upon a run.

The defendant made no offer to show the length of time either of the trains in question was delayed because of the alleged unknown causes, except that there was an offer to prove that the engine mentioned in count 2 of the petition was delayed 35 minutes at some station on the line because of a hot box. But notwithstanding this the train arrived at Redland, its terminal, within the 16-hour period, and the crew, except the fireman, relieved within that period. See Northern Pacific Ry. Co. v. United States, 213 Fed. 577, 580, 581, 130 C. C. A. 157 (9th C. C. A.).

The judgment must be and is affirmed.