ST. JOSEPH & G. I. RY. CO. v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 9, 1916.)

No. 4523.

1. MASTER AND SERVANT ☞13—STATUTORY REGULATION—HOURS OF SERVICE —CONSTRUCTION OF STATUTE.

The Hours of Service Act (Act March 4, 1907, c. 2939, 34 Stat. 1415 [Comp. St. 1913, §§ 8677–8680]) is a remedial statute, intended to promote the safety of employés and travelers on trains moving in interstate commerce, and should be liberally construed to effect its purpose.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. ☞13.]

2. COMMERCE ☞27—REGULATION—HOURS OF SERVICE—"INTERSTATE COMMERCE."

A train composed of cars loaded with material to repair the roadbed, which originated in another state and had arrived in the state in which it was to be used, but had not yet arrived at its destination, was still in "interstate commerce," and the employés thereon governed by the Hours of Service Act.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. ☞27.

For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

3. COMMERCE ☞27—REGULATION—HOURS OF SERVICE—INTERSTATE COMMERCE.

A fireman on a work train engaged in hauling cinders to be used in the repair of the roadbed of an interstate railroad is engaged in interstate commerce, and subject to the Hours of Service Act.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. ☞27.]

4. MASTER AND SERVANT ☞13—STATUTORY REGULATION—HOURS OF SERVICE —WATCHMAN.

Where a fireman, after a work train was run onto a siding, was required to keep watch of the engine and keep up steam therein until more than 16 hours after he began work, the Hours of Service Act was violated.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. ☞13.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. MASTER AND SERVANT ⊜⟿13—STATUTORY REGULATION—HOURS OF SERVICE —WORK TRAIN.

. The Hours of Service Act, which forbids an interstate carrier keeping an employé engaged in or connected with the movement of any train on duty more than 16 hours, applies to a work train.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 14; Dec. Dig. ⊜⟿13.]

In Error to the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Action by the United States against the St. Joseph & Grand Island · Railway Company. Judgment for the plaintiff on an agreed statement of facts, and defendant brings error. Affirmed.

The United States, plaintiff in the court below, instituted a civil action against the defendant, plaintiff in error, to recover penalties for violations of the Hours of Service Act of Congress, approved March 4, 1907. 34 Stat. 1415. There were two counts in the complaint for two violations; but the defendant confessed the first count, which is, therefore, eliminated from present consideration.

The second count charged the defendant with having required one J. Kramer, employed as a locomotive fireman by the defendant, regularly and generally engaged in and connected with the movement of defendant's trains engaged in interstate commerce, and while so engaged required and permitted him to remain on duty 20 hours; that the train was then used exclusively in the hauling of company material, to wit, ties and cinders, transported from a point without the state of Kansas to a point in the state of Kansas, said ties and cinders to be used in repairing and maintaining the defendant's line of railway between Hiawatha and Seneca, in the state of Kansas, which was then and there a through highway of interstate commerce.

The answer admitted the formal allegations of the complaint, and pleaded a general denial of the facts which charge the violation of the statute. A trial by jury was waived, and the cause submitted to the court upon the following agreed statement of facts:

"It is agreed between the parties hereto that a jury shall be waived and the above-entitled cause submitted to the court and determined upon the following facts, which are agreed by the parties to be true:

"First. The defendant is a railroad corporation organized under the laws of the state of Kansas, and is engaged in business as a common carrier of interstate commerce by railroad in the state of Kansas.

"Second. That its line of railroad extends from Kansas City, Mo., through and across a portion of said state, and into the state of Kansas, through and across a portion of the state of Kansas, and into the state of Nebraska, where it terminates.

"Third. That on the 25th day of February, 1913, and upon the defendant's line of railroad at and between the stations of Hiawatha, in the state of Kansas, and Seneca, in said state, the defendant's certain fireman and employé, to wit, J. Kramer, entered upon his duties as a locomotive fireman at the hour of 4:30 o'clock a. m. on the said 25th day of February, 1913, and continued on duty as such fireman until the hour of 7:30 o'clock p. m. of said date.

"Fourth. That at the hour of 7:30 p. m., as specified in paragraph 3 hereof, the defendant placed the train upon which the said J. Kramer was acting as locomotive fireman on the siding at the city of Seneca, in the state of Kansas, whereupon the members of the crew of said train ceased the performance of their regular duties, and all of the members of said crew, except the said J. Kramer, retired for rest under the provisions of the act of Congress mentioned in plaintiff's petition.

"Fifth. There being no competent person at the city of Seneca to whom the care of the engine on which the said J. Kramer was employed as fireman

⊜⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

could be intrusted, the defendant employed said J. Kramer to watch said engine, and as a part of his duties as such watchman he was required to maintain a certain amount of steam in said engine, to keep sufficient water pumped into the boiler, to prevent said engine from running away, which occasionally happens on account of leakage of steam, and to otherwise care for and protect said engine, and to protect the persons and property contiguous thereto from injury by said engine.

"Sixth. That the said J. Kramer as such watchman entered upon his duties at the hour of 7:30 p. m. on said 25th day of February, 1913, and continued as such watchman until the hour of 12:40 a. m. on February 26, 1913, when he was relieved by another competent watchman.

"Seventh. It is further stipulated and agreed that the train upon which the said J. Kramer was employed on the said 25th day of February, 1913, as fireman, and which he was employed to watch as heretofore set forth, was known as 'work extra,' and was drawn by defendant's locomotive engine No. 41; that said train consisted of one plow or dredge car, one car of ties and 20 cars of cinders; that all of the contents of every car contained in said train consisted of company material, to wit, ties and cinders, and was designed for use in repairing and maintaining the track and roadbed of the railroad belonging to the defendant between the stations of Hiawatha and Seneca in said state of Kansas.

"Eighth. That the car of ties and the 20 cars of cinders, which constituted a part of said train, originated outside of the state of Kansas, and were transported by the defendant into the state of Kansas as company material; that the plow or dredge car forming a part of said train belonged to the defendant, and was one of its implements used in repairing and maintaining its track; that the said cars of material were assembled from time to time at convenient sidings near the station of Hiawatha, in the state of Kansas, and were on the said 25th day of February, 1913, placed in said 'work extra' drawn by engine No. 41 as aforesaid to be distributed along the line of the defendant's railway between the stations heretofore mentioned and to be used in repairing and maintaining said track between said stations.

"Ninth. That the line of railroad between said stations of Hiawatha and Seneca over which said 'work extra' was hauled, and for which said ties and cinders were to be used in repairing and maintaining said track, was at the time mentioned in said petition a through highway of interstate commerce.

"Tenth. That at the times mentioned in plaintiff's petition, and for some time prior and subsequent thereto, said J. Kramer was an employé of the defendant regularly and generally engaged in and connected with the movements of defendant's trains engaged in interstate commerce."

Upon these facts the court found the defendant guilty on this count, and from the judgment entered on this finding the defendant prosecutes this writ of error.

Lucian J. Eastin, of St. Joseph, Mo. (Robert A. Brown, of St. Joseph, Mo., on the brief), for plaintiff in error.

Philip J. Doherty, of Washington, D. C. (Fred Robertson, U. S. Atty., of Kansas City, Kan., on the brief), for the United States.

Before ADAMS and CARLAND, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge (after stating the facts as above). The contention of the defendant is that the act of Congress does not apply to an employé on a work train, operated wholly within one state, although the train was brought from another state and the material transported was intended for use on the roadbed of the defendant beyond the point where the offense was committed, the road being a through highway of interstate commerce.

[1] In our opinion this is too narrow a view to take of this act, which was intended, as has been repeatedly held by the Supreme Court, as well as the inferior courts of the United States, as have the other Safety Appliance Acts, to be a remedial statute, intended to promote the safety of employés and travelers on trains moving in interstate commerce, and should be liberally construed to effect its purpose. Johnson v. Southern P. Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363; Schlemmer v. Buffalo Railroad Co., 205 U. S. 1, 27 Sup. Ct. 407, 51 L. Ed. 681; Southern Railway Co. v. United States, 222 U. S. 20, 32 Sup. Ct. 2, 56 L. Ed. 72; San Pedro, etc., R. Co. v. United States, 213 Fed. 326, 130 C. C. A. 28; Great Northern Ry. Co. v. United States, 218 Fed. 302, 134 C. C. A. 98, L. R. A. 1915D, 408.

[2] That the fireman on an interstate train is within the meaning of the act is not questioned, and cannot well be, but it is claimed that the interstate movement had ceased, as the material in the cars was to be used on the tracks of the defendant in the state of Kansas only, the train was no longer in interstate commerce. This contention is untenable, as the train had not yet reached its destination, and was to be carried further. McNeill v. Southern Ry. Co., 202 U. S. 543, 26 Sup. Ct. 722, 50 L. Ed. 1142.

[3] Nor can the contention of the defendant that, as the material was to be used on its tracks, although it is an interstate highway, the employé was not engaged in interstate commerce, be sustained. In Pedersen v. Delaware, etc., Ry. Co., 229 U. S. 156, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153, it was held that one carrying material to be used in repairing tracks, bridges, engines or cars, after they have become and during their use as instrumentalities of interstate commerce, is engaged in interstate commerce within the meaning of the act. In North Carolina Ry. Co. v. Zachary, 232 U. S. 248, 34 Sup. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159, it was held that when a freight train from an intrastate point is being made up of cars, some from a train which started in another state, an employé preparing an engine to move such a train is engaged in interstate commerce, even if the interstate cars had not yet been coupled up.

In Johnson v. Great Northern Ry. Co., 178 Fed. 643, 102 C. C. A. 89, this court held that one engaged in examining the air couplings of cars of a train while on a switch track, some of the cars containing interstate freight shipments, is employed in interstate commerce. In Lamphere v. Oregon Ry. & Nav. Co., 196 Fed. 336, 116 C. C. A. 156, 47 L. R. A. (N. S.) 1, it was held that a locomotive fireman, struck and killed by a train while crossing a track on his way to the station, to be transported to another place in the same state, to relieve there a fireman engaged on an interstate train, was employed in interstate commerce at the time. This case was cited with approval by the Supreme Court in the Pedersen Case.

In Illinois Central R. Co. v. Porter, 207 Fed. 311, 125 C. C. A. 55, one engaged in carrying interstate freight from the freight house to the cars with a hand truck was held to be engaged in interstate commerce. A track walker repairing a switch in a terminal yard, used for interstate as well as intrastate traffic, was held, in Central Railroad v. Colasurdo, 192 Fed. 901, 113 C. C. A. 379, to be employed in inter-

state commerce. One engaged in making repairs on an engine used for interstate commerce, after it had reached the end of the run, and placed on the fire track to await the time for the return trip to another state, was held in Baltimore & Ohio R. R. Co. v. Darr, 204 Fed. 751, 124 C. C. A. 565, 47 L. R. A. (N. S.) 4, to be engaged in interstate commerce. Telegraph operators, receiving or transmitting dispatches affecting the movement of interstate trains have been held to be engaged in interstate commerce. Baltimore & Ohio R. R. Co. v. Interstate Commerce Commission, 221 U. S. 612, 31 Sup. Ct. 621, 55 L. Ed. 878.

[4] That the fireman, in this instance, had been detailed to watch the locomotive engine during the excess hours, does not affect the result. This was expressly decided by this court in San Pedro, etc., Ry. Co. v. United States, supra, and Great Northern Ry. Co. v. United States, supra, where the facts were identical with those in this case.

[5] The fact that this fireman was employed on a work train was wholly immaterial, if it was in fact an interstate train. The act of Congress makes no such exception, and the courts certainly are powerless to do so. The gist of the offense is that the carrier is engaged in the transportation of passengers or property by railroad from one state to another, and that the employé is actually engaged in or connected with the movement of *any* train. "Any train" is certainly broad enough to include a work train.

As the agreed statement of facts shows that the employé was required to remain on duty over 20 hours, that the train on which he was employed had been brought from another state, and had not yet reached its final destination, as the material was intended to be carried further, that the material was to be used in repairing the track, which was an interstate highway, the employé was, at the time, engaged in interstate commerce, in connection with the movement of an interstate train. The judgment of the court below was right, and is affirmed.