## UNITED STATES v. PITCAIRN et al.

### No. 12014.

District Court, E. D. Missouri, E. D.

Feb. 11, 1938.

Harry C. Blanton, U. S. Atty., of Sikeston, Mo., and Herbert H. Freer, Asst. U. S. Atty., of St. Louis, Mo., and James O. Tolbert, Asst. U. S. Atty., of Washington, D. C., for the United States.

N. S. Brown, R. B. Elster, and Homer Hall, all of St. Louis, Mo., for defendants.

MOORE, District Judge.

This is a civil action brought under the Hours of Service Act, 45 U.S.Code, §§ 61–64, 45 U.S.C.A. §§ 61–64, which makes it unlawful for a common carrier by railroad, its officers, or agents, to require or permit certain of its employees to be or remain on duty more than 16 consecutive hours.

The case contains three causes of action and is based upon the defendant receivers requiring or permitting three of their employees to be on duty more than 16 consecutive hours on March 24, 1936, May 11, 1936, and June 15, 1936, to wit, from 8:00 o'clock a. m. on each of the days named until 1:30 o'clock a. m. on the following days, or a total of 17 hours and 30 minutes.

Most of the evidentiary facts were agreed upon by stipulation and are substantially as follows: The employees were firemen on defendants' switch engines in the St. Louis terminals, and as such were engaged in the transportation of interstate traffic. On the dates mentioned, they went on duty in defendants' St. Louis Avenue Yard at 8:00 o'clock a. m. and continued on duty there until 4:00 o'clock p. m. on the same days. Upon completion

of that tour of duty, these employees were called to report for duty at defendants' Luther Yard, some 3 or 4 miles distant, to begin work at 5:30 o'clock p. m. for a second 8-hour shift.

Two of the employees made the trip between the two yards by walking several blocks to the street car line, boarded the car and rode to the entrance of Luther yard, got off and walked to a nearby restaurant and had something to eat, then walked several blocks to where they were to begin work, arriving there at about 5:20 o'clock p. m., and started working at 5:30 p. m. The other employee used his privately owned automobile in going from one yard to the other and stopped at his home en route for his evening meal. All three testified that practically the entire time between 4 p. m. and 5:30 p. m. was consumed in going from one yard to the other and eating meals en route.

The three employees then commenced work on the switch engines in Luther Yard at 5:30 o'clock p. m. and continued in that work until 1:30 o'clock a. m. the following morning.

The question presented for determination is whether or not the time between 4 p. m. and 5:30 p. m. on each of the days mentioned is to be considered as on duty or off duty. If on duty, the employees were on duty 17 hours and 30 minutes, and the law was violated by exceeding the 16-hour limitations. If not on duty, these limitations had not been exceeded and the law was not violated.

Judgment has been entered for the government on each of the three causes of action upon the findings that the employees were on duty 17 hours and 30 minutes and hence the law had been violated. The defendants have filed a motion for a new trial and the case is here for further consideration on that motion.

The purpose of the Hours of Service Act is stated in its title 34 Stat. 1415 as being an "Act To promote the safety of employees and travelers upon railroads by limiting the hours of service of employees thereon." It is well known that the Congress was moved to enact this legislation on account of the large number of disastrous wrecks and other accidents due to tired and overworked employees. The rule laid down by the courts in construing such remedial statutes is to endeavor to carry out the intent of the Congress and to give such statutes a liberal construction to effectuate the purpose intended. Johnson v. Southern Pacific Co., 196 U.S. 1, 25 S.Ct. 158, 49 L. Ed. 363; St. Joseph & G. I. Ry. Co. v. United States, 8 Cir., 232 F. 349.

The courts have been called upon from time to time to determine just what interval of time and under what circumstances a release or respite may be considered an off duty period and thus break the continuity of service. The rule is well stated by the Circuit Court of Appeals for the Ninth Circuit in United States v. Southern Pac. Co., 245 F. 722, in which that court held that the following instruction should have been given the jury by the District Court: "A release, to break the continuity of service, must be such that all the facts and surrounding circumstances will permit of the employes being absolutely free to come and go at will, and not so restricted that the complete enjoyment of such release may be hampered by the fear that such employee may be wanted by his employer at some particular place during such time of release for duty in connection with his regular work." Page 723.

In Missouri, Kansas & Texas Railway Co. of Texas v. United States, 231 U.S. 112, 34 S.Ct. 26, 58 L.Ed. 144, the Supreme Court, in considering the question of a release given a train crew, said (page 27): " * * * But they were under orders, liable to be called upon at any moment, and not at liberty to go away. They were none the less on duty when inactive. Their duty was to stand and wait."

In Minneapolis & St. L. R. Co. v. United States, 245 F. 60, the Circuit Court of Appeals for the Eighth Circuit, in a case where employees were absolutely relieved from duty for periods ranging from 2 hours to 2 hours and 20 minutes, at a terminal where there were facilities for rest and meals, said (page 64):

"That an employe is absolutely relieved from service is not of controlling importance, if the time is so short or the opportunities for rest are so meager that for all practical purposes an employee does not have the opportunity for rest which the law requires. * * *

"We are of the opinion that the periods of release were periods of waiting

244

which gave no proper opportunity for rest."

The evidence shows conclusively that the three employees mentioned in the complaint were on duty continuously for 17 hours and 30 minutes; that the hour and a half interval between 4 p. m. and 5:30 p. m. on each of the 3 days was a period which gave no opportunity for rest whatsoever, but, on the other hand, the employees were as much on duty while going from one yard to the other, under orders from defendants, as though they were on the switch engines in the yards moving interstate traffic. To hold that such a period was not on duty would defeat the letter and spirit of the law, which, as already stated, was designed to promote safety in railway operation by preventing overwork and undue fatigue on the part of employees engaged in arduous labors.

The motion for a new trial will therefore be denied.