## CANADIAN PAC. RY. CO. v. THOMPSON.

(Circuit Court of Appeals, First Circuit. April 28, 1916.)

### No. 1171.

1. MASTER AND SERVANT ☞265(2)—INJURIES TO SERVANT—BURDEN OF PROOF —NEGLIGENCE OF MASTER.

   In an action for the death of a railroad brakeman in a collision between a work train and a hand car, the burden is on the plaintiff to prove negligence of the railroad company. Whitney v. New York, N. H & H. R. Co., 102 Fed. 850, 43 C. C. A. 19, 50 L. R. A. 615, applied.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 878, 895, 896; Dec. Dig. ☞265(2).]

2. COMMERCE ☞27—FEDERAL EMPLOYERS' LIABILITY ACT—"EMPLOYED IN INTERSTATE COMMERCE."

   A brakeman on a work train of an interstate and foreign railroad which was engaged in picking up rails along tracks used for interstate traffic, to transport them to other points on the interstate tracks, was

"employed in interstate commerce," within the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. 1913, §§ 8657–8665]).

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 25; Dec. Dig. ☞27.

For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

In Error to the District Court of the United States' for the District of Maine; Clarence Hale, Judge.

Action by Barbara Thompson, administratrix, against the Canadian Pacific Railway Company. Judgment for the plaintiff, and defendant brings error. Affirmed.

E. C. Ryder, of Bangor, Me. (Ryder & Simpson, of Bangor, Me., on the brief), for plaintiff in error.

Raymond Fellows, of Bangor, Me. (J. A. Cahners, Oscar F. Fellows, and Fellows & Fellows, all of Bangor, Me., on the brief), for defendant in error.

Before PUTNAM and DODGE, of Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. It is the view of the court that the judgment in this case in the District Court, in favor of the original plaintiff, should be affirmed. Suit was brought under the Employers' Liability Act, and the circumstances are told by the defendant in error, the original plaintiff, as follows:

"This is an action brought by Barbara Thompson, administratrix, under the Employers' Liability Act of April 22, 1908, in the District Court of the United States for the District of Maine, to recover damages for the negligent killing of Edgar E. Thompson, a brakeman in the employ of the Canadian Pacific Railway, on November 24, 1913, near Greenville Junction, Me., on the main track running between the state of Maine and the Dominion of Canada. The jury found for the plaintiff, defendant in error, in the sum of $5,000.

"Edgar E. Thompson, the intestate of plaintiff, defendant in error, was 27 years old at the time of his death, a man of good health, earning $3.25 a day, the sole support of the widow, Barbara Thompson, for whose benefit this action was brought. He had been employed by the Canadian Pacific Railway nine years as conductor and brakeman, running on trains between Brownville, within the state of Maine, to Megantic and McAdam Junction, in the Dominion of Canada.

"On the morning of Monday, November 24, 1913, he was a member of the train crew engaged in track work; train of the company consisting of engine, caboose, rail loader, and two empty flat cars. The testimony of Kenneth McLeod, track foreman, who had charge of the rail loader, was that he covered the territory from Greenville Junction, Me., to Megantic, Dominion of Canada; that the crew, of which the deceased was one member, started to load the 'four-spot' rails, so called, for the purpose of clearing the track and roadbed, and to transport and distribute these rails along the main track between Brownville Junction and Holeb, some 30 to 40 miles, where these 'four-spot' rails were to be put onto rail racks for the repair of the main track. It appears that, at the scene of the accident, new rails had been put into the track. The old rails had been removed, and this crew, engaged in loading rails, was picking out from these rails that had been removed the best grade of rails, or, as they were called, 'four-spot' rails, to be used in the repair of the track, between Maine and Canada. The rails which were being loaded onto this flat car were scattered along on the roadbed and beside the track. These

rails, which were picked up on the morning of November 24th, were distributed, under the direction of Mr. McLeod, to be used in the repair of this international track, wherever and whenever it became necessary to replace worn or broken rails."

## Also it appears:

"The train was operating on Monday morning, November 24th, on the main international line, and between Squaw Brook and Greenville Junction, in the state of Maine. The work was interrupted three different times, because this work train had to take side tracks in order to clear through passenger and freight trains. Mr. Thompson, the deceased, was in charge of the train when it was loading the 'four-spot' rails, in that he had charge of giving the signals to move the train back and forth opposite the particular rails to be loaded. At the instant of the accident one car had been loaded with the rails, and the train crew was carrying this car of rails to Greenville, to be there set on a side track on its way to the distributing points of the rails. The train was backing. The empty flat car was therefore the front end of the train. The intestate was standing, as his duties required him to stand, on this empty flat car. The train was proceeding at a speed of about 10 miles an hour. As this empty flat car reached a high and narrow cut at the point of a sharp curve in the track, it struck a hand car on the track. The crew of the hand car had given no warning by stationing a man ahead, as required by the rules. Before the flat car struck the hand car, Thompson gave the signal to stop. The brakes were applied, but the train had sufficient momentum, so that the hand car was demolished and the flat car was derailed, and Thompson was thrown under the car, receiving injuries from which he died.

"It appears that up to the time of the accident men had been working for the company in putting in ties at this point. One of these men on the hand car was a man named Duquette, who was employed by the Canadian Pacific on this track work. At the time he was seen by the witness McLeod, he was standing near the ruins of the hand car, crying. The men on the hand car, at the time of the accident, were going in the direction of the tools that had been left beside the track."

One defense was a claim that the men on the hand car had been discharged on Saturday, a day and a half previous to the accident. The evidence of discharge was, however, that the roadmaster had discharged one Michaud, whom he says had charge of a section gang of 15 or 18 men. There was no evidence introduced to show that these men on the hand car had been discharged, or (if they belonged to this extra crew) had been informed that their foreman was discharged. In fact, Berger, the roadmaster, testified that he had sent a section man down to collect the tools.

[1] The ground of this defense appears to be that, as this was a suit representing an employé, and not representing a mere passenger or a stranger, the burden rested on the plaintiff to show that the defendant, the Canadian Pacific Railway Company, had been guilty of negligence. On this point, and also on the main point of the case, fully covered by what we have stated, the matters as we have stated them are not substantially in dispute. Inasmuch as the suit was brought by a representative of an employé, the burden did rest on the plaintiff to show that the condition of the hand car which was destroyed, in connection with the circumstances which we have related, represented negligence on the part of the Canadian Pacific Railway Company, as fully explained by us in Whitney v. New York, New Haven & Hartford Railroad Company, 102 Fed. 850, 43 C. C. A. 19,

50 L. R. A. 615. The facts, however, show an obstruction on the main track of the Canadian Pacific Railway Company which presumptively should not have been there. They also show that, when the hand car was left where the accident occurred, it was presumptively left there by a working crew of the Canadian Pacific Railway Company, which had just been using it. There was sufficient in the facts connected with the case to justify its submission to the jury, even in accordance with the rules explained, as we have said, in Whitney v. New York, New Haven & Hartford Railroad Company.

[2] The main defense, of course, was either that the Canadian Pacific Railway Company was not engaged in interstate commerce so far as this transaction was concerned, or that the intestate was not so engaged at the time when the accident occurred. The proofs, as we say, do not contravene the facts substantially as we have stated them. If there are any variances, they are too unimportant to be commented on so far as this case is concerned. In all this class of cases, the effort by the defendant corporations has been to split into fragments what was in fact a unit, and what was in fact a unitary occupation or enterprise. The Canadian Pacific Railway Company is notoriously and presumably a single enterprise, extending from the Atlantic Ocean to the Pacific Ocean, in part through the United States, but in the greater part through Canada. Both in the inherent purposes of the organization, and in its operation, there is one, single, consolidated, unitary essence; and so far as any person connected with trains operating thereon, in any way contributed to produce the result aimed at by the corporation, the corporation was a single, consolidated, international, interstate enterprise; and in all its essential aspects the train of cars employed in the present case for the present purpose, connecting, as it did international points, and all the persons employed on that train, were engaged in an international enterprise and operation. In this aspect there were no fragments, but all was combined in a consolidated and single purpose.

This rule was illustrated emphatically and positively in the striking and leading case, referred to so often as the Pedersen Case, 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153, where a mechanic who, for all that the case showed, had never been out of the state of New Jersey, was engaged in carrying material to be used in repairing a bridge on an interstate commerce railroad. In the Shanks Case, decided by the Supreme Court on January 10, 1916, 239 U. S. 556, 36 Sup. Ct. 188, 60 L. Ed. ——, while it was held that at the time of the injury the prosecutor, as well as the corporation, must be engaged in interstate commerce, a mechanic engaged solely in taking down and putting up an overhead countershaft was not necessarily so engaged. In the persent case the intestate was employed as a conductor or brakeman running trains between Brownville, in the state of Maine, and Megantic and McAdam Junction, in Canada, being east and west terminals in a foreign country, and where the train in which he was engaged was especially set up for and engaged in gathering up rails from interstate tracks, to be taken to other parts of the interstate tracks; and this was being done with-

out any suggestion that they were to be left at intrastate points. It is therefore evident that the deceased was directly employed in an interstate enterprise, which the Canadian Pacific Railway Company as a unit had undertaken.

Beyond this it is sufficient that we refer to St. Joseph & Grand Island Railway Company v. United States, 232 Fed. 349, —— C. C. A. ——, decided in the Circuit Court of Appeals for the Eighth Circuit on March 9, 1916. When analyzed, the cases are so strikingly alike that the authority of the decision in the Eighth Circuit completely fits and covers the corresponding conclusion reached by the District Court in the present case. Every possible feature for claiming that the case in the Eighth Circuit was not within the federal statutes, which can possibly be urged in the present case, was met and disposed of adversely to the transportation corporation; and, after stating the facts as we have stated them, we would have no occasion to do otherwise than follow the Eighth Circuit in the case referred to.

The judgment of the District Court is affirmed, with interest, and the defendant in error recovers her costs of appeal.