## Arthur B. Anderson, Appellee, v. Chesapeake and Ohio Railway Company, Appellant.

### Gen. No. 34,962.

602

Opinion filed December 2, 1931.   Rehearing denied December 22, 1931.

WILLIAM G. WISE, for appellant.

SAMUEL COHEN and CHARLES C. SPENCER, for appellee.

MR. JUSTICE FRIEND delivered the opinion of the court.

This is an action on the case brought by Arthur B. Anderson, as plaintiff, against Chesapeake and Ohio Railway Company, defendant, to recover damages for injuries sustained by him on the 12th day of March, 1928. The action is based on the Federal Employers' Liability Act, Cahill's St. ch. 114, ¶ 321 *et seq.*, plaintiff having been employed by the defendant at the time of the accident, and for a number of years prior thereto. The case was tried before the court and jury, resulting in a verdict finding the defendant guilty and assessing plaintiff's damages at the sum of $25,000. The trial court required plaintiff to remit the sum of $6,250 from the amount of the verdict thus rendered. The remittitur was accepted by plaintiff, and judgment entered in his favor for $18,750, from which this appeal is prosecuted.

Plaintiff's declaration consists of three counts, each alleging that defendant was a common carrier, operating between the State of Indiana and other States, and that both plaintiff and defendant were, at the time of the accident, engaged in interstate commerce. The first count charges negligence, due to the fact that the freight car, upon which plaintiff received injuries, was not equipped with an efficient hand brake as required by the Federal Safety Appliance Act. The second count charges negligence in the operation of the freight car at the time of the injury. The third count charges negligence because of improper loading of the car with rails. Defendant filed a plea of not guilty to each count of the declaration, and also pleaded that plaintiff was not employed by or at work for the defendant in interstate commerce at the time of the accident, and was not entitled to have an action against the defendant under the Federal Employers' Liability Act.

It appears from the evidence that plaintiff was about 35 years of age at the time of the accident, and had been employed by defendant on its railroad as brakeman, and occasionally as extra conductor, for a period of 14 years, during which he resided at Peru, Indiana, a division point on defendant's line. The injury occurred on March 12, 1928, shortly after 3 o'clock in the afternoon. On that day, plaintiff was employed as brakeman, or flagman, on a work train which was engaged in picking up old rails between Hoover and Twelve Mile, stations on the defendant's railroad line in Indiana. It was plaintiff's duty to flag and stop trains running on the main line so that the work train could be sidetracked, when necessary, to allow such trains to pass. The rails had previously been removed from the main track and were being loaded onto cars in the work train by section men. The record contains evidence showing that the car on which plaintiff received injuries was to be switched out and unloaded

between Merrillville and Malden, to replace the rails in the main track, both of the aforementioned places being in the State of Indiana. The accident occurred at Twelve Mile, where there were four tracks, the main track, the sidetrack, the elevator or grain track and the house track.

At the time the accident happened, the train crew were engaged in a switching operation, the purpose of which was to line up the cars in the train so that one car of rails could be set out at North Judson, Indiana, and another car unloaded the next day between Malden and Merrillville. The crew went to the west end of the house track and switched several cars out onto the main line, the car on which plaintiff was injured being next to the engine. This car was then taken by the engine to a point west of the switch leading into the house track and was cut off by brakeman Jones and given a "kick" into the house track. Plaintiff got on the car after it passed over the switch and climbed up to the brake board to set the brake. He testified that the brake seemed to stick suddenly, that he unwound the brake and tried it again, but that it failed to hold. Plaintiff was about a car length, or 40 feet, east of the switch when the car entered the house track, and the standing cars on the house track were eight or ten car lengths east of the switch. The car increased in speed, it being somewhat downgrade.into the house track, and was going about eight miles an hour at the time of the collision. The car was what is known as a gondola car, the hand brake and brake step being on the end, and the wheel of the brake extending 14 inches above the top of the rim of the car. According to plaintiff's testimony, the brake did not seem to hold. He states he wound the brake wheel three times, each time the brake failing to hold and having no effect in stopping the car. No particular defect in the brake is disclosed by the evidence, except that the brake head was loose and the brake shoes did not stick.

It further appears from the evidence that plaintiff dropped or was thrown back into the car at the time of the collision, his legs being caught and pinned between the rails and the end of the car; that in order to release him, a tie was placed against the end of the car and the engine gave the car a bump, thereby shifting the rails back and releasing his legs.

The train in question had been working around Twelve Mile station on the day prior and on the day of the accident. It had been in and out of Twelve Mile several times on that day, switching cars in and out of the house track and getting out of the way of the other trains passing on the main line. There appears to be no conflict in the evidence as to the manner in which the accident occurred.

Defendant urges three principal grounds for reversal: (1), that there is no evidence showing that plaintiff was employed in interstate commerce at the time of the injury; (2), that there is no evidence showing that plaintiff's injury was caused by any negligence on the part of defendant, by reason whereof defendant's motion to instruct the jury to find defendant not guilty should have been given; and (3), that the verdict of the jury is excessive.

With reference to the first contention, defendant urges that the work of removing rails from the right of way along the main line had been completed; that the car had been brought into Twelve Mile and placed on the house track, and the movement of the car at the time of the injury was for the purpose of lining it up in the work train; that this was a mere local switching movement, lacking the elements of interstate transportation either of the cars or the contents thereof. The authorities upon the question of what constitutes employment in interstate commerce are uniform in holding that the employment must be shown to be such at the time the injury occurred. However, a liberal

construction of the act has generally been employed as applicable to the facts of a given case, and where other duties are so closely connected with the operation constituting employment in interstate commerce as to be a part thereof, recovery has generally been allowed. Cases relied upon by plaintiff disclose this attitude on the part of our courts. Two of the decisions are precisely in point. In *Kusturin v. Chicago & Alton R. Co.*, 287 Ill. 306, plaintiff was loading rails which had been removed from the track about two weeks previously. The court held that the removal of the rails was an incident to the repairing of the track, and stated in its opinion that: "Such repair work is, as we have seen, so connected with interstate commerce as to be a part thereof. The work of loading these old rails, while not the actual work of bolting in new rails, was yet a part of the cleaning up process made necessary by putting in new rails. This work could not be said to in any way be an incident to intrastate commerce. . . . In this case the one operation connected with interstate commerce was that of repairing the track, and if the removal of these old rails was a part of such repair work then the defendant in error was engaged in interstate commerce at the time of his injury."

The facts in the case of *Canadian Pacific Ry. Co. v. Thompson*, 232 Fed. 353, are almost identical with those in the case at bar. Thompson, the deceased, was in charge of a train loading rails taken from the main right of way, to be used in the repair of the track between the State of Maine and Canada along defendant's right of way. It was his duty to give the signals for the movement of the train back and forth opposite the particular rails to be loaded. At the instant of the accident one car had been loaded with rails and the train crew was carrying this car of rails to Greenville, to be there set on a sidetrack on its way to the distributing points of the rails. Intestate, Thompson,

was standing, as his duties required him to do, on the flat car which was proceeding at a speed of about 10 miles an hour, when without warning the train collided with a hand car, causing the injury which resulted in his death. The main defense in that case was either that the railway company was not engaged in interstate commerce so far as that transaction was concerned, or that the intestate was not so engaged at the time when the accident occurred. The court, however, sustained the recovery against the railway company, and after an exhaustive review of the facts, said in its opinion as follows: "In all this class of cases, the effort by the defendant corporations has been to split into fragments what was in fact a unit, and what was in fact a unitary occupation or enterprise. . .. . In the present case the intestate was employed as a conductor or brakeman running trains between Brownville, in the State of Maine, and Megantic and McAdam Junction, in Canada, being east and west terminals in a foreign country, and where the train in which he was engaged was especially set up for and engaged in gathering up rails from interstate tracks, to be taken to other parts of the interstate tracks; and this was being done without any suggestion that they were to be left at intrastate points. It is, therefore, evident that the deceased was directly employed in an interstate enterprise, which the Canadian Pacific Railway Company, as a unit, had undertaken."

It will thus be observed that at the time of their injuries, Anderson, plaintiff herein, and Thompson, intestate, in the case hereinabove cited, were each employed on a work train which had been picking up rails, and that in each instance the train had left the immediate scene of the work. In the case at bar, the car was on a switch track in the course of its transportation, and in the *Thompson* case the car was on its way to a switch track, and in each instance the rails

had been picked up from alongside an interstate road, and were being transported to be used in repairing another part of the interstate road. In both cases, where the rails were picked up, and the place to which they were being transported for distribution and use, were in the same State. Clearly, the removal of the rails was an incident to the repairing of the track and was not completed by merely placing the rails in the car. We are of the opinion that the weight of authority supports the conclusion that plaintiff was at the time of the accident engaged in interstate commerce.

It is next urged that the evidence fails to show that plaintiff's injury was caused by defendant's negligence. In this connection, it is argued that the record fails to disclose any evidence of defects in the brake other than plaintiff's own statement that the brake failed to work. To rebut plaintiff's testimony on this question, defendant introduced evidence tending to show that the brake had worked properly on the morning of the day and prior to the time of the accident, as well as after the accident, and that no defects were found therein either before or after plaintiff's injury. A similar contention was made in the recent case of *Detroit, T. & I. R. Co. v. Hahn,* 47 Fed. (2d) 59, in which certiorari was denied by the Supreme Court. The plaintiff in that case was a brakeman on a freight train. By means of a switching operation two cars were placed on the main track. Plaintiff was stationed on top of these cars in order to stop them by use of a hand brake before they reached other cars standing on the main track. He set the brake on the leading car as tightly as it could be set and when the speed of the car still increased he proceeded to set the brake on the other car. Before he could apply it, however, the cars collided with those standing on the track and he was thrown off and injured. The court, in discussing the examination of the brakes immediately before and

after the injury, stated in its opinion: ''Appellant introduced . . . evidence that the brake was examined before and immediately after the accident and found to be in good working order. We are asked to accept that evidence as conclusive. This we cannot do, for the evidence of appellee that the brake was used in the normal and usual manner and failed to work was such evidence of inefficiency as to make an issue for the jury.''

The other contention relative to the question of negligence is whether plaintiff exercised proper care for his own safety immediately prior to the injury. Defendant contends that plaintiff assumed a position of danger in proceeding to the rim of the car after he had wound the brake twice, and also that he failed to make any attempt to get off the car when he saw the collision was about to take place. It is evident from the record, however, that immediately preceding the accident, plaintiff found himself in a position of great danger, and, in line with his duty, was doing his utmost to bring the car to a stop before the collision ensued. The degree of care required of him, under the circumstances, and the question of what he did or did not do and what he should have done when he found himself in this dangerous position, are debatable questions that were properly submitted to the jury, and we are not disposed to disturb the verdict on that ground.

The remaining question relates to the amount of the verdict. The record discloses that plaintiff's injuries rendered him a permanent cripple, with one leg considerably shorter than the other, and with a large area of diseased bone in the right leg which, at the time of the trial, substantially two and a half years after the injury, still caused an open and running sore. After the injury, plaintiff was pinned for several minutes between the ends of the rails and the front of the car. He was then taken 12 miles to Peru in the caboose. During this trip, he bled profusely. For 60 days he

lay flat on his back in the hospital, with a cast on both legs, and his right leg was suspended in a frame over him. Four major operations and numerous slight ones for the removal of fragments of bone were performed. At the time of the trial, if he bore his weight on the right leg, it would cause him severe pain. By reason of his injuries he was unable to work and did not work for almost two years. He was then elected to the office of city treasurer of Peru for a term of four years at a salary of $2,000 a year. His earnings, prior to the accident for several years, had been $2,600 and $2,800 per year. In the light of these circumstances, we do not regard the judgment as excessive. *Griswold v. Chicago Rys. Co.*, 253 Ill. App. 498.

For the reasons stated, the judgment of the superior court will be affirmed.

*Affirmed.*

HEBEL, P. J., and WILSON, J., concur.